***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour. The appealing party has shown good ground to reconsider the evidence. The Full Commission affirms in part, and reverses in part, the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction of the parties and the subject matter. *Page 2 
2. At all times relevant to this claim, an employer-employee relationship existed between plaintiff and defendant.
3. Defendant is self-insured and Key Risk Management Services is the third-party administrator.
4. The parties stipulate to a compensation rate of $111.96 per week.
5. During the hearing, defendant stipulated that plaintiff suffered a compensable injury by accident involving her lower back arising out of and in the course of her employment with defendant. Defendant denies that plaintiff suffered a compensable injury to her neck as a result of this accident and denies that plaintiff suffered any disability beyond April 14, 2003, as a result of this accident.
6. During the hearing, defendant stipulated that plaintiff did not return to work for defendant after her accident of March 7, 2003.
 *********** EXHIBITS
The Deputy Commissioner admitted the following exhibits into evidence:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement
 (b) Stipulated Exhibit 2: Plaintiff's medical records and bills
 (c) Stipulated Exhibit 3: Medical Payments
 (d) Defendant's Exhibit 1: Form 18
 (e) Defendant's Exhibit 2: Form 33
 (f) Defendant's Exhibit 3: Plaintiff's Discovery Responses
 *********** *Page 3 
Based upon the credible evidence of record and reasonable inferences drawn therefrom, the Full Commission finds as fact the following: FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 47 year-old female with a high school education.
2. At the time of her admittedly compensable low back injury on March 7, 2003, plaintiff had worked for defendant for approximately 14 years as a meat cook in a McDonald's restaurant.
3. Prior to March 7, 2003, plaintiff did not have any health problems that prevented her from working.
4. While at work on March 7, 2003, plaintiff entered a walk-in freezer to shelve some bagels. While exiting the freezer, plaintiff slipped on some ice and fell to the floor.
5. Plaintiff continued to work immediately following the accident, but presented to Nash Urgent Care with complaints of lower back pain later the same day. Plaintiff did not complain of or report any cervical or neck symptoms. X-rays of plaintiff's lumbar and thoracic spine were negative. Plaintiff was released to return to light-duty work; however, defendant informed plaintiff that no light-duty work was available.
6. Plaintiff continued to treat with Nash Urgent Care for lower back pain on March 12, 17 and 27, 2003. During these appointments, plaintiff's light-duty work restrictions were continued and she was referred to physical therapy. Plaintiff did not complain of or report any cervical or neck symptoms during these visits. At the April 2, 2003 appointment, plaintiff reported lower back pain, with pain radiating into her upper back and neck, and was referred for an orthopaedic evaluation. This visit was the first that plaintiff reported any neck pain, and *Page 4 
plaintiff did not report any neck pain to any of her medical providers until September 24, 2003, over six months after the March 7, 2003 injury by accident. Based on the symptoms patient later described to Dr. Martinez when he diagnosed her with a cervical disc herniation on December 16, 2003, the Full Commission finds there to be insufficient evidence to show that the isolated instance of neck pain that plaintiff reported on April 2, 2003, was proximately related to her later treatment for cervical disc herniation by Dr. Martinez.
7. On April 14, 2003, plaintiff presented to Dr. Grieg McAvoy for an orthopaedic evaluation. Dr. McAvoy interpreted x-rays of plaintiff's thoracic and lumbar spine to be within normal limits. Dr. McAvoy diagnosed plaintiff with low back pain with no signs of nerve deficits or nerve irritation, recommended a home exercise program, and released plaintiff to return to regular duty work without restrictions.
8. Plaintiff delivered a full duty release note to defendant, however she did not return to work due to her belief that she was unable to work. Larry Thomas Winbourne, director of operations for defendant, testified that he was aware of plaintiff's April 14, 2003 full-duty release by Dr. McAvoy. He testified that plaintiff's position was held open for her, and that defendant was "hoping she's come back to work." Mr. Winbourne further testified that plaintiff was considered to be on "medical leave" and was "never terminated."
9. On June 16, 2003, plaintiff returned to Dr. McAvoy for re-evaluation. At this visit, she complained of both lower back and neck pain. Dr. McAvoy ordered another lumbar MRI but did not order a cervical MRI. The lumbar MRI was performed on July 3, 2003 and revealed slight osteoarthritic changes but no disc extrusion or stenosis. On the basis of this MRI, Dr. McAvoy, on July 3, 2003, deemed plaintiff to have reached maximum medical improvement, *Page 5 
assigned a permanent partial disability rating of 0% to plaintiff's back, and advised plaintiff to "continue with normal activities without restrictions."
10. Plaintiff began overlapping treatment with her primary care physician, Dr. Samuel Wesonga, at the Boice-Willis Clinic on April 24, 2003. Plaintiff initially reported only lower back pain to Dr. Wesonga, and made no mention of cervical or neck pain. It was not until September 24, 2003, over six months after the March 7, 2003 injury by accident that plaintiff reported both lower back/extremity pain and neck/shoulder pain to Dr. Wesonga.
11. Dr. Wesonga ordered a cervical MRI for the first time since plaintiff's accident at work. The MRI revealed disc herniations superimposed on severe circumferential spinal stenosis at C5-C6 and C6-C7. As a result, Dr. Wesonga referred plaintiff for neurosurgical evaluation.
12. On December 16, 2003, plaintiff presented to Dr. Lucas J. Martinez, a neurosurgeon at Rocky Mount Neurosurgical and Spine Consultants. Dr. Martinez diagnosed plaintiff with herniated disks in the neck at C6-C7 on the left and C5-C6 on the right.
13. On February 5, 2004, Dr. Martinez performed cervical surgery that consisted of an anterior cervical microdiscectomy and anterior interbody fusion at C6-C7.
14. Following her surgery, plaintiff continued to treat with Dr. Martinez, including a regimen of physical therapy from which she was discharged on August 12, 2004. Plaintiff last saw Dr. Martinez on August 25, 2004, but continued to treat with Dr. Wesonga for chronic pain as of the date of hearing before the Deputy Commissioner.
15. Dr. Wesonga testified that, as of the date of his deposition, he continued to keep plaintiff out of work due to her chronic pain back pain and the sedative effects of the pain medication. On the issue of causation, Dr. Wesonga testified that be believed plaintiff's low back and cervical problems were related to her work-related fall on March 7, 2003. However, *Page 6 
upon further examination, Dr. Wesonga testified that if plaintiff did not develop cervical symptoms until September 2003, when she first reported symptoms to him, he could not state to a reasonable degree of certainty that there was a causal link between the symptoms and the work incident. Dr. Wesonga expressly conceded that the sole basis for his causation opinion with respect to plaintiff's neck condition was the mere temporal proximity of her symptoms to the fall. The Full Commission gives greater weight to the opinions of Dr. McAvoy, who released plaintiff to return to work full-duty as of April 14, 2003, and found plaintiff to be at MMI with a 0% impairment on July 2003, as opposed to the opinions of Dr. Martinez, who based his causation opinions on the mere temporal proximity of plaintiff's symptoms to the fall.
16. On the issue of causation, Dr. Martinez believed there to be a causal link between plaintiff's cervical condition and the work-related fall on March 7, 2003. However, like Dr. Wesonga, Dr. Martinez also based his causation opinion on the temporal proximity of plaintiff's symptoms to the fall. Dr. Martinez testified that he had not reviewed any treatment records prior to plaintiff's treatment with him, and admitted that he did not even know that plaintiff had not reported any cervical or neck symptoms to her other providers until six months after the accident. Dr. Martinez, upon further examination, conceded that if plaintiff did not develop cervical symptoms until six months after the accident in question, he would not find there to be a causal link between the two. The Full Commission gives greater weight to the opinions of Dr. McAvoy, who released plaintiff to return to work full-duty as of April 14, 2003, and found plaintiff to be at MMI with a 0% impairment on July 2003, as opposed to the opinions of Dr. Wesonga, who based his causation opinions on the mere temporal proximity of plaintiff's symptoms to the fall. *Page 7 
17. Based upon the greater weight of the competent medical evidence of record, the Full Commission finds that plaintiff has failed to show that her cervical back condition is causally related to her accident at work on March 7, 2003.
18. Based upon the greater weight of the competent medical evidence of record, the Full Commission finds that plaintiff was returned to work full duty and without restrictions by Dr. McAvoy on April 14, 2003. Further, Dr. McAvoy, on July 3, 2003, deemed plaintiff to have reached maximum medical improvement, assigned a permanent partial disability rating of 0% to plaintiff's back, and advised plaintiff to "continue with normal activities without restrictions." Thus, the Full Commission finds that plaintiff has failed to show disability beyond her release to return to work on April 14, 2003.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. For an injury to be compensable under the terms of the N.C. Workers' Compensation Act, it must be proximately caused by an accident arising out of and suffered in the course of employment. Click v. PilotFreight Carriers, Inc., 300 N.C. 164, 265 S.E.2d 389 (1980). Plaintiff in the present matter has failed to show that her cervical back condition was proximately caused by the March 7, 2003 injury by accident. Id.
2. As a result of her compensable low back condition, plaintiff is entitled to total disability compensation at the rate of $111.96 per week from March 8, 2003, through April 14, 2003, the date she was released to return to full-duty work. N.C. Gen. Stat. § 97-29. *Page 8 
3. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of her low back condition as may reasonably be required to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25. Plaintiff has failed to show that she is entitled to medical expenses for her cervical back condition. Id.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendant shall pay total disability compensation to plaintiff at the rate of $111.96 per week from March 8, 2003, through April 14, 2003, the date she was released to return to full-duty work, subject to the attorney's fee provided herein.
2. Defendant shall pay for medical expenses incurred or to be incurred as a result of plaintiff's compensable lower back condition as may reasonably be required to effect a cure, provide relief, or lessen the period of disability.
3. Defendant shall pay a reasonable attorney's fee to plaintiff's counsel in the amount of twenty-five percent (25%) of the compensation awarded to plaintiff herein.
4. Defendant shall pay the costs due the Commission.
This 31st day of January 2007.
S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 9 
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER